Ms. Cindy Huggins 475138 E. 1130 RD Muldrow, Oklahoma 74948
Dear Ms. Huggins:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B) (Supp. 2007), for an opinion concerning the release of records pertaining to the non-renewal of your teaching contract. You report that the school district chose to non-renew your contract at the conclusion of the school year, and that a request has been made under the Arkansas Freedom of Information Act ("FOIA") for copies of documents relating to your non-renewal-including documents obtained during any investigation — as well as a copy of your contract. You state that the school district has verbally advised you that your "personnel files" will be released. You have specifically noted a previous Attorney General Opinion which addresses the release of documents pertaining to the non-renewal of a school superintendent, and you have asked whether this would also apply to your circumstances.
RESPONSE
My statutory duty under A.C.A. § 25-19-105(c)(3)(B) is to determine whether the decision of the custodian of records as to the release of "personnel or evaluation records" is consistent with the FOIA. Because I have not seen the actual records in question, I am unable to opine conclusively as to the release of any particular documents. As a general matter, however, the employment contracts of public school teachers are public records and open to public inspection and copying under the FOIA.See Op. Att'y Gen. Nos. 2005-120 and 2003-385 (and opinions *Page 2 
cited therein). Accordingly, the district's decision to release your contract is in my opinion generally consistent with the FOIA.
With regard to the district's apparent decision to release other records contained in your "personnel files," the discussion must be limited to the applicable tests for disclosure of records typically contained in such files. I will state, however, that assuming your contract was in fact simply non-renewed, and that you were neither suspended nor terminated, then in my opinion, consistent with Op. Att'y Gen. 2001-125, the test discussed further below for disclosure of any job performance or evaluation records has not been met, and the district's decision is contrary to the FOIA to that extent.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2007).
Given your position as a public school teacher, it seems clear that the requested documents qualify as "public records" under this definition. As one of my predecessors noted in: "If records fit within the definition of `public records' . . . they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." Op. Att'y Gen. p9-305.
A "personnel file" of a public employee will typically include "personnel records" as well as "employee evaluations or job performance records" for purposes of the FOIA. See, e.g., Op. Att'y Gen. 2005-011. It will be important for the custodian of the records to distinguish between the two, because their release is governed by *Page 3 
different standards. With regard to "personnel records," although the FOIA does not define this term, this office has consistently taken the position that "personnel records" are any records other than employee evaluation/job performance records that relate to the individual employee. See Op. Att'y Gen. 2006-071. Personnel records must be released unless their disclosure would constitute a "clearly unwarranted invasion of [the employee's] personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2007). The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." The Arkansas Supreme Court has construed the phrase, however, applying a balancing test and weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice, 308 Ark. 593,826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy." The court in Young
noted the following in this regard:
 The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain `warranted' privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.
308 Ark. at 598.
If there is little public interest in information, however, the privacy interest will prevail if it is not insubstantial. See Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125 (1998). Additionally, given that exemptions from disclosure must be narrowly construed, see, e.g., Orsini v. State,340 Ark. 665, 13 S.W.3d 167 (2000), it is the burden of an individual resisting disclosure to establish that his "privacy interests outweighed that of the public's under the circumstances presented." Stilley, supra,332 Ark. at 313.
Because I have not reviewed any of the specific documents at issue, I cannot offer a definitive opinion as to their classification or release. In Op. Att'y Gen. 2006-048, my immediate predecessor listed a number of documents that were subject to *Page 4 
release under the above test for personnel records. He enumerated items that are typically subject to release as including: public employees' names, dates of hire, job titles and salaries; amounts paid for accrued leave; education backgrounds, including schools attended and degrees received; work histories; work e-mail addresses; listed telephone numbers, assuming there is no heightened privacy interest; attendance and leave records; payroll forms documenting leaves of absence; documents related to any compensation a former employee receives in addition to their regular paycheck; contracts or agreements related to an employee's separation from employment; internal affairs notification documents; notice of personnel action; job applications; resumes, including references; and letters of recommendation.
On the other hand, my predecessor concluded, and I agree, that the public generally has little interest in the personal details of the following information: insurance coverage; tax information or withholding; payroll deductions; banking information; marital status of employees and information about dependents; personal e-mail addresses; unlisted telephone numbers; social security numbers; and date of birth. My predecessor also noted the specific exceptions for state income tax records (A.C.A. § 25-19-105(b)(1) (Supp. 2005)) and home addresses of non-elected state, municipal and county employees (A.C.A. §25-19-105(b)(13)). He also mentioned photocopies of drivers' licenses and social security cards as being exempt. Op. 2006-048 at 4.
Again, I cannot address all of the potential items that might need to be redacted under the "personnel records" exemption. The custodian of the records must review each document to determine whether it is subject to release under this test and whether any appropriate redactions are required.
With regard to "employee evaluation or job performance records," again, the FOIA does not define this term; nor has the phrase been construed by the Arkansas Supreme Court. This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records.See, e.g., Op. Att'y Gen. Nos. 2006-038, 2006-035, 2005-030, 2004-211, 2003-073, 98-006, 97-222, 95-351, 94-306, and 93-055. The record must also have been created for the purpose of evaluating an employee. See, e.g., Op. Att'y Gen. 2006-038; and 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view *Page 5 
toward correcting any deficiencies. See J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (m m Press, 4th ed. 2004) at 196. It has therefore been opined that "[d]ocuments not created in the evaluation process do not come within the rationale behind the25-19-105(c)(1) exemption." See Op. Att'y Gen. 2005-267, citing Op. Att'y Gen. 2005-094. In this regard, it has been stated that: ". . . some of the records contained in [an] internal affairs file may not constitute . . . employee evaluation/job performance records . . ." and that "such records must be evaluated by the custodian to determine whether they are subject to other specific exemptions from disclosure." Op. Att'y Gen.2003-306 at 4. They may be "personnel records" for purposes of the FOIA — and create no unwarranted invasion of privacy — or simple public records subject to no exemption. Id.
In my opinion, documents such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, letters related to promotions and demotions, and records that were generated as part of an investigation of allegations of the misconduct and that detail incidents that gave rise to such allegations generally fall within the category of "employee evaluations or job performance records." See, e.g., Op. Att'y Gen. Nos. 2006-035, 2003-078, 2001-203, 99-147, 93-105, 93-055, 92-231, and 91-324.
"Employee evaluation or job performance records" are releasable only if the following three conditions have been met:
 1. There has been a final administrative resolution of any suspension or termination proceeding;
 2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1). Employee evaluation or job performance records cannot be released unless each prong of this test has been met.
As my predecessor noted in Op. Att'y Gen. 2006-007, "[t]he question of whether there has been a final administrative resolution of a termination or suspension and the question of whether the requested records formed a basis for that termination or suspension are clearly questions of fact that can be readily determined." Id. at 6, *Page 6 
citing Op. Att'y Gen. 2005-011. I will also note in this regard that in the case of an employee who is subject to the Teacher Fair Dismissal Act, A.C.A. § 6-17-1501 — 1510 (Repl. 1999 and Supp. 2007), there is a clear distinction between the "nonrenewal" and "termination" of a contract. See id. at-1506 (requiring a supervisor to advise a teacher in writing of problems that "could lead to termination or nonrenewal. . . .") Accordingly, I believe the analysis in Op. Att'y Gen. 2001-123
(enclosed herein) regarding the nonrenewal of a superintendent's contract, with which I fully concur, applies as well to a teacher who falls under the Teacher Fair Dismissal Act. Indeed, because the legislature has distinguished between the "non-renewal" and "termination" of a such a teacher, there seems little doubt that non-renewal is not tantamount to termination for purposes of A.C.A. § 25-19-105c(c)(1).
With regard to the final portion of the test for the release of evaluation or job performance records, the FOIA at no point defines the phrase `compelling public interest.' However, Professors Watkins and Peltz, referring to this office's opinions on this issue, offer the following guidelines:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the who commits a serious breach of public trust should be sufficient to satisfy the `compelling public interest' requirement.
Watkins and Peltz, supra at 207 (footnotes omitted). Professors Watkins and Peltz also note that "the status of the employee" or "his rank within the bureaucratic hierarchy" may be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.") The existence of a "compelling public interest" *Page 7 
in disclosure will necessarily depend upon all of the surrounding facts and circumstances.
The custodian of the records in this instance must evaluate each document within the personnel file according to the standards set forth above. As I have previously noted, I cannot offer a definite opinion on specific documents. I believe it is clear, however, that a teacher's contract is generally open to public inspection and copying, and that non-renewal generally is not tantamount to suspension or termination for purposes of A.C.A. § 25-19-105(c)(1).
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General *Page 1